UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BECK BUSINESS CENTER, INC. (a Michigan
Corporation), BECK OFFICE CENTER, LLC
(a Michigan Limited Liability Company),
VASILIOS DAMAVOLETES, KYRIAKOS
DAMAVOLETES, and MARIA
DAMAVOLETES,           Case No. 10-CV-10914

        Plaintiffs,           Paul D. Borman
                   United States District Judge
v.


MICHIGAN HERITAGE BANK, LEVEL ONE
BANK, MARY IANNARONE, FEDERAL
DEPOSIT INSURANCE CORPORATION, in its
capacity as receiver for Michigan Heritage Bank,
and in its corporate capacity, RAYMOND A. BIGGS,
ROBERT LENNOX, GARY SCHLINKERT,
and H. PERRY DRIGGS, JR.,

        Defendants.
_____/

## OPINION AND ORDER GRANTING THE MOTION TO DISMISS OF DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CORPORATE CAPACITY

This matter is before the Court on the motion of the Federal Deposit Insurance Corporation, in its corporate capacity ("FDIC Corporate"), to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 31.) Plaintiffs have filed a response (Dkt. No. 36) and FDIC Corporate has filed a reply (Dkt. No. 38.) The Court heard oral argument on July 29, 2010. For the reasons that follow, the Court GRANTS the motion of the FDIC Corporate to dismiss.

1

**I.     BACKGROUND**

On October 7, 2004, Plaintiff Beck Office Center, LLC ("BOC") entered into a ten (10) year lease agreement with Defendant Michigan Heritage Bank ("MHB") at BOC's building located at 28345 Beck Road in Wixom, Michigan. (Compl. ¶ 24, Ex. 1, § 1.02.) The base rent under the lease was $4,024 per month with an annual cost of living adjustment. (Compl. ¶ 25, Ex. 1, § 2.07.) The lease also obligated BOC to return the leased premises to their original condition upon termination or expiration of the lease at the request of MHB. In addition to leasing space from MHB, BOC and Defendant Beck Business Center, Inc. ("BBC") maintained three different savings accounts with MHB which were opened in 2005, 2007 and 2009. (Compl. ¶ 28.)

On April 24, 2009, the State of Michigan's Office of Financial and Insurance Regulation ("MOFIR") closed MHB and appointed the Federal Deposit Insurance Corporation as receiver. ("FDIC-Receiver"). (Compl. ¶ 29; FDIC-Receiver Mot., Exs. B (Appointment) and C (Acceptance of Appointment).) FDIC-Receiver succeeded to all right, titles, powers and privileges of MHB pursuant to 12 U.S.C. § 1821(c)(3)(A). (FDIC-receiver Mot. 1, ¶ 4.) On April 27, 2009, in accordance with the provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. §§ 1821 *et seq.* ("FIRREA"), FDIC-Receiver sent notice of its receivership over MHB to all creditors of MHB reflected on the books and records of the institution on that date, including Plaintiff BOC. (FDIC-Receiver Reply, Ex. 1, Declaration of Jeffry Quick, May 14, 2010, ¶ 3.) The notice informed all recipients that they were required to file with the FDIC-Receiver any claims against MHB or the FDIC-Receiver by July 28, 2009 and that failure to do so would result in the barring of any claims against either MHB or the FDIC-Receiver. (*Id.* ¶¶ 3, 4.)

On April 24, 2009, the same date that the FDIC-Receiver accepted appointment as receiver

of MHB, Defendant Level One Bank ("Level One"), located in Farmington Hills, Michigan, entered into a Purchase and Assumption agreement ("P&A Agreement") with FDIC-Receiver and FDIC-Corporate whereby Level One acquired all of MHB's deposits accounts, including those of BOC and BBC. (Compl. ¶ 30; Pls.'s Resp. to Mot. FDIC-Receiver, Ex. A (Copy P&A).) At the time of the appointment of the FDIC-Receiver, Defendant Mary Iannarone ("Iannarone") was the branch manager of MHB's Wixom branch and continued as branch manager after the purchase by Level One. (Compl. ¶ 31; Mot. FDIC-Corp. 1.)

In early June, 2009, Plaintiff Maria Damavoletes ("Maria"), an officer of BBC and a member of BOC, became aware that two unauthorized withdrawals, each in the amount of $10,000, had been made from one of the BOC Savings Accounts at MHB, one on April 23, 2009 and the other on April 24, 2009. (Compl. ¶¶ 4, 33.) Maria contacted Iannarone, the MHB Wixom branch manager, and inquired about the unauthorized withdrawals. Maria was assured by Iannarone, who refused to give Maria any details about the withdrawals, that the money would be returned immediately. (Compl. ¶¶ 34-36.) Over the next two months, Maria tried to obtain information and passwords from both Iannarone and Level One corporate offices, so that she could check on-line to determine what was going on with the unauthorized withdrawals which had never been returned to the BOC Savings Account. (*Id.* ¶ 38-39.)

On or about August 20, 2009, Maria became aware that other unauthorized withdrawals had been made from each of the BOC Savings Accounts, as follows: (1) April 22, 2009 in the amount of $9,000 (2) April 22, 2009 in the amount of $10,000; (3) April 24, 2009 in the amount of $10,000; (4) July 7, 2009 in the amount of $9,000; (5) July 9, 2009 in the amount of $10,000; and (6) July 10, 2009 in the amount of $9,500. (Compl. ¶¶ 44-45, Ex. 4 (Proof of Withdrawals and Transfers).)

3

According to the allegations of the Complaint, Maria immediately contacted Level One corporate, and a Police investigation ensued during which Maria and co-Plaintiffs Vasilios Damavoletes ("Vasilios"), also an officer of BBC and member of BOC, and Kyriakos Damavoletes ("Kyriakos"), were implicated by Defendant Iannarone as having stolen the money. (Compl. ¶¶ 50-54.) Level One posted a notice on the door of the Wixom branch, which is located in the BOC office building, indicating that "Damavaol" must be verified and on August 31, 2009, froze certain of BOC's assets, which resulted in returned checks and late fees on BOC's account with Level One. (Compl. ¶¶ 55-61.) The Police investigation ultimately resulted in Defendant Iannarone confessing to the withdrawals without authorization and for her own personal benefit, and criminal charges were filed against her. Counsel for Plaintiffs informed the Court at the hearing on July 29, 2010 that Iannarone entered a plea of *nolo contendere* to the criminal charges on June 15, 2010. (Compl. ¶ 65-66.)[1]

Konrad Stauch, who was an attorney for BOC at the time of these events but has since passed away, filed a Proof of Claim, presumably relating to these events, with the FDIC-Receiver on behalf of BOC on September 17, 2009, nearly two months after the July 28, 2009 claim bar date. (*Id*. ¶ 5.) The FDIC-Receiver disallowed BOC's claim as untimely on December 15, 2009. (Pls.'s Resp. to FDIC-Receiver Mot., Ex. D (copy of disallowance of claim).)

---

[1] The parties do not dispute the fact that Iannarone was responsible for the fraudulent withdrawals. Plaintiffs have requested that Level One reimburse them for these losses and allege that Level One has refused. (Compl. ¶ 67.) Level One maintains that it has reimbursed Plaintiffs $28,500 for the three withdrawals that occurred in July, even though Iannarone was not a Level One employee in July. *See* Level One Bank's Motion to Dismiss or for Summary Judgment, Dkt. No. 6, p. 3. These allegations are addressed in the pending motions to dismiss, which have been filed by all of the non-FDIC Defendants except Iannarone, who has not filed an appearance in the case and has not responded to the Complaint.

On January 25, 2010, Plaintiffs filed the instant Complaint in Oakland County Circuit Court; the FDIC-Receiver timely removed to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1441.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Id*. at 555 (internal citations omitted). Dismissal is only appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more

> than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id*. at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In addition to the allegations and exhibits of the complaint, a court may consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citations omitted).

### III. ANALYSIS

Plaintiffs claim against the FDIC Corporate, which the Court can only glean from Plaintiffs' response to FDIC Corporate's motion to dismiss as the Complaint fails to delineate the claim against the FDIC in its corporate capacity, appears to be that the bank records as to the amount of funds on deposit in Plaintiffs' accounts on the date that MHB failed are not conclusive as to the amount of insurable deposits because an employee of MHB embezzled funds from those accounts, thus creating

a balance on deposit that was less than the amount that Plaintiffs were entitled to have insured. (Pls.'s Reply FDIC Corp., Dkt. No. 36, 6.) "The Plaintiffs' theory of liability against the FDIC is essentially contained in Count II - Breach of Contract and Counts III and IV - which state fraud. The FDIC's liability is for the actions of other defendants that altered the balance sheet of the Plaintiffs' insured deposit account prior to the bank take over." (*Id.*)

The FDIC-Corporate moves to dismiss for failure to state a claim, arguing that none of the allegations of Plaintiffs' Complaint assert claims against the FDIC in its corporate capacity, which is separate and distinct from the FDIC in its capacity as receiver. The FDIC Corporate is a separate and distinct legal entity from the FDIC Receiver, and neither is liable for the acts of the other. *FDIC v. Nichols*, 885 F.2d 633, 636 (9th Cir. 1989). FDIC Corporate is an agency and instrumentality of the United States, and functions as a bank regulator and insurer of bank deposits. 12 U.S.C. §§ 1818, 1821(a). FDIC Receiver acts as a receiver for failed institutions, analyzing and collecting assets and making distributions to creditors. 12 U.S.C. § 1821(d)(2)(A). "Because FDIC Corporate and FDIC Receiver perform two different functions and protect wholly different interests, courts have been careful to keep the rights and liabilities of these two entities separate." *Bullion Services, Inc. v. Valley State Bank*, 50 F.3d 705, 709 (9th Cir. 1995); *In re F & T Contractors*, 718 F.2d 171, 176 (6th Cir. 1983); *FDIC v. Dixon*, 681 F. Supp. 2d 408, 410 (E.D. Mich. 1988).

By operation of law, FDIC-Receiver, not FDIC Corporate, becomes a party to a failed institution's contractual agreements. 12 U.S.C. § 1821(d)(2)(A). FDIC-Corporate is not a successor-in-interest or an agent of a failed bank and therefore recovery for losses arising out of the improper acts of an MHB employee must be sought solely from the FDIC-Receiver and not FDIC Corporate. FDIC Corporate does not succeed to MHB's obligations on its lease nor does it insure

deposits against fraudulent acts. *In re Collins Securities Corp. v. FDIC*, 998 F.2d 551, 555 (8th Cir. 1993) ("Deposit insurance protects depositors from loss due to the bank's insolvency, not loss from the bank's pre-insolvency mistakes . . . .").

Plaintiffs cite *FDIC v. Records*, 34 F. Supp. 600 (W.D. Mo. 1940); *Jones v. FDIC*, 24 F. Supp. 985 (D.C. Okl. 1938) and *Barton v. Johnson, aff'd FDIC v. Barton*, 106 F.2d 737 (10th Cir. 1939) – pre-depression decisions – for the proposition that the records of a failed bank on the date of receivership "are not conclusive on the of the level of insurance coverage that should have been afforded to the Plaintiffs by the FDIC. [This] case law supports the plaintiff's contention that the FDIC did not afford the level of insurance coverage that would have been proper." (Pls.'s Resp. FDIC Corp. at 5.) However, as the FDIC Corporate points out in its reply, much has changed since these cases were decided and deposit insurance is now a matter of federal law and regulation. *See e.g. Goldin v. FDIC*, 985 F.2d 261, 264 (6th Cir. 1993).

Federal Regulations governing deposit insurance coverage provide that FDIC Corporate must look to the records of the failed institution at the time of closing to determine its deposit insurance obligations: "The amount of a deposit is the balance of principal and interest unconditionally credited to the deposit account as of the date of default of the insured depository institution, plus the ascertainable amount of interest to that date . . . ." 12 C.F.R. § 330.3(i)(1). FDIC-Corporate is entitled to rely on these account records, which are considered conclusive as to a claimant's entitlement to deposit insurance. *Philadelphia Gear Corp. v. FDIC*, 751 F.2d 1131, 1138 (10th Cir. 1984), *rev'd on other grounds* 476 U.S. 426 (1986). This regulatory-imposed finality is essential to the functioning of the FDIC which often must make decisions regarding purchase and assumption agreements, such as the agreement between the FDIC and Level One, overnight. "'We will not

undermine the speed and efficiency of bank takeovers by imposing a requirement upon the FDIC to locate and evaluate every possible avenue of disputed liability in implementing the takeover of a failed bank.'" *Villafane-Neriz v. FDIC*, 75 F.3d 727, 732 (1st Cir. 1994) (quoting *Raine v. Reed*, 14 F.3d 280, 283 (5th Cir. 1994)). The FDIC's reliance on those records is not affected by the underlying reason for the claimed discrepancy. "In fact, the case law supports the FDIC's dependence on the books and records of the Bank at the time of failure even though the balance was a result of alleged unauthorized activity." *Villafane, supra* at 732.

Deposit insurance simply does not cover losses such as those claimed by Plaintiffs here, which relate to pre-insolvency actions of the failed bank. "'The regulations are clear and simple, either the amount is credited to the account, in which case it is covered by deposit insurance, or the amount is not on the books, in which case it becomes a general liability of the bank.'" *Id*. at 733 (quoting *Raine, supra* at 284). Plaintiffs' claim, if any, is against the FDIC Receiver who steps into the shoes of the failed institution, not against the FDIC Corporate for deposit insurance.

Plaintiffs' Complaint contains no allegations that relate to any function of the FDIC Corporate.[2] Count I alleges breach of the lease between MHB and BOC and seeks damages against MHB officers and shareholders; Count II alleges breach of contract relating to the unauthorized withdrawals which took place prior to receivership; Counts III-VI allege fraudulent and negligent misrepresentations regarding Plaintiffs' accounts and mishandling of those accounts by MHB and

---

[2] As an initial matter, the Court does not see that Plaintiffs' are even making a claim for deposit insurance at this point. They offer no evidence of what the bank records actually showed at the date of closing and only surmise that those records would indicate an amount that would be less than what Plaintiffs would be entitled to claim. In any event, if the records are as Plaintiffs' portray, they have no claim against the FDIC Corporate for payment of any deficiency. Such a claim would lie solely against the FDIC Receiver.

9

Level One; Count VII alleges negligent supervision of Iannarone by MHB and Level One; Count VIII alleges defamation by Level One and its employees; Counts IX-X allege intentional and negligent infliction of emotional distress regarding conduct of Level One employees; and Count XI alleges that Defendants failed to protect Plaintiff from embezzlement of their accounts at MHB and Level One. None of these allegations relate to any action of FDIC Corporate in its role as an insurer against insolvency. Under the pleading standards of *Twombly* and *Iqbal*, the allegations fail to state a plausible claim against FDIC Corporate and the FDIC is entitled to dismissal of Plaintiffs' Complaint.

## IV. CONCLUSION

The Court GRANTS the FDIC Corporate's Motion to Dismiss (Dkt. No. 31) and DISMISSES Plaintiffs' Complaint against the FDIC Corporate with prejudice.

**IT IS SO ORDERED.**

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: August 5, 2010

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 5, 2010.

S/Denise Goodine
Case Manager