UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BECK BUSINESS CENTER, INC. (a Michigan
Corporation), BECK OFFICE CENTER, LLC
(a Michigan Limited Liability Company),
VASILIOS DAMAVOLETES, KYRIAKOS
DAMAVOLETES, and MARIA
DAMAVOLETES,                                             Case No. 10-CV-10914

                Plaintiffs,                         Paul D. Borman
                                                     United States District Judge
v.

MICHIGAN HERITAGE BANK, LEVEL ONE
BANK, MARY IANNARONE, FEDERAL
DEPOSIT INSURANCE CORPORATION, in its
capacity as receiver for Michigan Heritage Bank,
and in its corporate capacity, RAYMOND A. BIGGS,
ROBERT LENNOX, GARY SCHLINKERT,
and H. PERRY DRIGGS, JR.,

                Defendants.
_____/

OPINION AND ORDER
GRANTING THE MOTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR MICHIGAN HERITAGE BANK'S MOTION TO STAY PENDING
EXHAUSTION OF ADMINISTRATIVE REMEDIES

      The matter is before the Court on the Federal Insurance Deposit Corporation as Receiver for Michigan Heritage Bank's ("FDIC Receiver") motion to stay this action pending exhaustion of administrative remedies or, alternatively to dismiss the action. (Dkt. No. 11.) Plaintiffs filed a response (Dkt. No. 23) and FDIC Receiver filed a reply (Dkt. No. 26.) For the reasons that follow, the Court GRANTS the motion to stay pending exhaustion of administrative remedies and STAYS

this action as to all parties and proceedings, commencing on the date that this Order is entered and ending on the earlier of 180 days from the date on which Plaintiffs file their claims with the FDIC receiver or the date on which the FDIC disallows the claims.

**I.     BACKGROUND**

On October 7, 2004, Plaintiff Beck Office Center, LLC ("BOC") entered into a ten (10) year lease agreement with Defendant Michigan Heritage Bank ("MHB") for the premises located at 28345 Beck Road in Wixom, Michigan. (Compl. ¶ 24, Ex. 1, § 1.02.) The base rent under the lease was $4,024 per month with an annual cost of living adjustment. (Compl. ¶ 25, Ex. 1, § 2.07.) The lease obligated MHB to return the leased premises to their original condition upon termination or expiration of the lease at the request of BOC. In addition to its role as landlord to MHB, BOC, and Co-Plaintiff Beck Business Center, Inc. ("BBC"), were customers of MHB and maintained three different savings accounts with MHB which were opened in 2005, 2007 and 2009. (Compl. ¶ 28.)

On April 24, 2009, the State of Michigan's Office of Financial and Insurance Regulation ("MOFIR") closed MHB and appointed the Federal Deposit Insurance Corporation as receiver. ("FDIC-Receiver"). (Compl. ¶ 29; FDIC-Receiver Mot., Exs. B (Appointment) and C (Acceptance of Appointment).) FDIC-Receiver succeeded to all right, titles, powers and privileges of MHB pursuant to 12 U.S.C. § 1821(c)(3)(A). (FDIC-receiver Mot. 1, ¶ 4.) On April 27, 2009, in accordance with the provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. §§ 1821 *et seq.* ("FIRREA"), FDIC-Receiver sent notice of its receivership over MHB to all creditors of MHB reflected on the books and records of the institution on that date, including Plaintiff BOC. (FDIC-Receiver Reply, Ex. 1, Declaration of Jeffry Quick, May 14, 2010, ¶ 3.) The notice informed all recipients that they were required to file any claims against MHB or

the FDIC-Receiver, with the FDIC-Receiver by July 28, 2009, and that failure to do so would result in the barring of any claims against either MHB or FDIC-Receiver. (*Id.* ¶¶ 3, 4.)

On April 24, 2009, the same date that the FDIC-Receiver accepted appointment as receiver of MHB, Defendant Level One Bank ("Level One"), located in Farmington Hills, Michigan, entered into a Purchase and Assumption agreement ("P&A Agreement") with FDIC-Receiver and FDIC-Corporate whereby Level One acquired all of MHB's deposits accounts, including those of BOC and BBC. (Compl. ¶ 30; Pls.'s Resp. to Mot. FDIC-Receiver, Ex. A (Copy P&A).)

At the time of the appointment of the FDIC-Receiver, Defendant Mary Iannarone ("Iannarone") was the branch manager of MHB's Wixom branch and continued as branch manager after the purchase by Level One. (Compl. ¶ 31; Mot. FDIC-Corp. 1.)

In early June, 2009, Plaintiff Maria Damavoletes ("Maria"), an officer of BBC and a member of BOC, became aware that two unauthorized withdrawals, each in the amount of $10,000, had been made from one of the BOC Savings Accounts at MHB, one on April 23, 2009 and the other on April 24, 2009. (Compl. ¶¶ 4, 33.) Maria contacted Iannarone, the MHB Wixom branch manager, and inquired about the unauthorized withdrawals. Maria was assured by Iannarone, who refused to give Maria any details about the withdrawals, that the money would be returned immediately. (Compl. ¶¶ 34-36.) Over the next two months, Maria tried to obtain information and passwords from both Iannarone and Level One corporate offices, so that she could check on-line to determine what was going on with the unauthorized withdrawals which had never been returned to the BOC Savings Account. (*Id.* ¶ 38-39.) These attempts were unsuccessful.

On or about August 20, 2009, Maria became aware that other unauthorized withdrawals had been made from each of the BOC Savings Accounts, as follows: (1) April 22, 2009 in the amount

3

of $9,000 (2) April 22, 2009 in the amount of $10,000; (3) April 24, 2009 in the amount of $10,000; (4) July 7, 2009 in the amount of $9,000; (5) July 9, 2009 in the amount of $10,000; and (6) July 10, 2009 in the amount of $9,500. (Compl. ¶¶ 44-45, Ex. 4 (Proof of Withdrawals and Transfers).)

According to the allegations of the Complaint, Maria immediately contacted Level One corporate, and a Police investigation ensued during which Maria and Plaintiffs Vasilios Damavoletes ("Vasilios"), also an officer of BBC and member of BOC, and Kyriakos Damavoletes ("Kyriakos"), were implicated by Defendant Iannarone as having stolen the money. (Compl. ¶¶ 50-54.) Level One posted a notice on the door of the Wixom branch, which is located in the BOC office building, indicating that "Damavaol must be verified" (which the Damavoletes understood as a blatant reference to them and their creditworthiness) and on August 31, 2009, froze certain of BOC's assets, which resulted in returned checks and late fees on BOC's account with Level One. (Compl. ¶¶ 55-61.)

The Police investigation ultimately resulted in Defendant Iannarone confessing to the withdrawals without authorization and for her own personal benefit; criminal charges were filed against her. Counsel for Plaintiffs informed the Court at the hearing on July 29, 2010 that Iannarone entered a plea of *nolo contendere* to the criminal charges on June 15, 2010. (Compl. ¶ 65-66.)[1]

Konrad Stauch, who was an attorney for BOC at the time of these events but has since passed

---

[1] The parties do not dispute the fact that Iannarone was responsible for the fraudulent withdrawals. Plaintiffs have requested that Level One reimburse them for these losses and allege that Level One has refused. (Compl. ¶ 67.) Level One maintains that it has reimbursed Plaintiffs $28,500 for the three withdrawals that occurred in July, even though Iannarone was not a Level One employee in July. *See* Level One Bank's Motion to Dismiss or for Summary Judgment, Dkt. No. 6, p. 3. These allegations are addressed in the pending motions to dismiss which have been filed by all of the non-FDIC Defendants except Iannarone, who has not filed an appearance in the case and has not responded to the Complaint.

away, filed a Proof of Claim, presumably relating to these events, with the FDIC-Receiver on behalf of BOC on September 17, 2009, nearly two months after the July 28, 2009 claim bar date. (*Id*. ¶ 5.) The FDIC-Receiver disallowed BOC's claim as untimely on December 15, 2009. (Pls.'s Resp. to FDIC-Receiver Mot., Ex. D (copy of disallowance of claim).) On January 25, 2010, Plaintiffs filed the instant Complaint in Oakland County Circuit Court; the FDIC-Receiver timely removed to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1441.

## II.   STANDARD OF REIVEW

The FDIC-Receiver does not specify under which rule it files its motion, but the motion appears to be one to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Pursuant to Rule 12(b)(1), dismissal of an action is appropriate where a court does not enjoy subject matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir.2007) (citation omitted). Having invoked the jurisdiction of the federal courts, "the plaintiff bears the burden of proving that jurisdiction exists." *Id.* Thus, when evaluating a motion to dismiss pursuant to Rule 12(b)(1), the United States Court of Appeals for the Sixth Circuit has instructed:

> In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. However, where a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true.

*Nichols v. Muskingum College,* 318 F.3d 674, 677 (6th Cir. 2003) (internal citations omitted).

5

## III. ANALYSIS

### A. Administrative Review Under FIRREA

Title 12 U.S.C. § 1821(d)(13)(D) of FIRREA forecloses judicial determination in the first instance, of claims against an insolvent bank in receivership: "[N]o court shall have jurisdiction over ( i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corportaion has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver." 12 U.S.C. § 1821(d)(13)(D). Such claims must first be reviewed under the FIRREA administrative claims process. Section 1821(d)(6)(A) provides for judicial review of claims that are timely filed and disallowed or not reviewed by the receiver. The Sixth Circuit has summarized FIRREA's mandatory administrative claims process as follows:

> Upon its appointment as receiver, FDIC is required to publish notice that the failed institution's creditors must file claims with FDIC by a specified date not less than ninety days after the date of publication. 12 U.S.C. § 1821(d)(3)(B). FDIC is also required to mail notice to all known creditors of the failed institution. [12 U.S.C.] § 1821(d)(3)(C). It has 180 days from the date of filing to allow or disallow claims. [12 U.S.C.] § 1821(d)(5)(A)(i). Claimants have sixty days from the date of disallowance, or from the expiration of the 180-day administrative decision deadline, within which to seek judicial review in an appropriate United States district court. [12 U.S.C.] § 1821(d)(6)(A).

*Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 384-85 (6th Cir. 2008) (citations omitted).

FIRREA also provides that "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before appointment of the receiver." 12 U.S.C. § 1821(d)(5)(F)(ii). Courts have consistently read this provision in conjunction with the

6

claims process provision to conclude that, while FIRREA itself does not specifically mandate a 180-day stay, such a stay must be implied to effectuate the purposes of the act: "[T]he word 'continue,' taken within the context of theses provisions, plainly directs a court to stay the proceedings against the [FDIC] until the claim-filing process runs its 180 day course." *Simms v. Biondo*, 785 F. Supp. 322, 324 (E.D.N.Y. 1992). *See also Glover v. Washington Mutual Bank, F.A.*, No. 08-990, 2009 WL 798832 at * 5 (W.D. Pa. March 20, 2009) ("District courts in this circuit have ploughed through the muddy waters of FIRREA's stay provisions and have determined that a stay is implied during the pendency of the administrative claims process.").

Failure to comply with these statutory time limitations results in the claimant relinquishing any further right to relief on such claims. *Id*. at 385-386. Thus, either a failure to file a claim by the date specified by the FDIC, or a failure to seek judicial review within 60-days of either a disallowance or expiration of the 180-day period, will result in a final extinguishing of the claim. *Id*. *See also Simon v. FDIC*, 48 F.3d 53, 56 (1st Cir. 1995) ("Section 1821(d)(13)(D)(i) bars all claims against the assets of a failed financial institution which have not been presented under the administrative claims review process.") Noting an inherent tension between the apparent jurisdictional bar in § 1821(d)(13)(D) and the judicial review process embodied in § 1821(d)(6)(A), the Sixth Circuit, along with many other circuits, has interpreted FIRREA "as imposing a statutory exhaustion requirement rather than an absolute bar to jurisdiction." *Village of Oakwood, supra*, 539 F.3d at 385 (quoting *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 763 (5th Cir. 1996)). Thus, exhaustion of FIRREA's administrative remedies is a "jurisdictional prerequisite to suit in district court" and "failure to file an administrative claim within the period provided by § 1821(d)(6) results in [a claimant] having 'no further rights or remedies with respect to such claim[s]

7

. . . .'" *Id.* at 386.

   B.   **Plaintiffs' Alleged Failure to Exhaust Administrative Remedies.**

The FDIC-Receiver argues that Plaintiffs were required, by virtue of these provisions, to first present their claims to the FDIC-Receiver for review as a prerequisite to seeking relief in this Court, and seeks a stay pending Plaintiffs' exhaustion of those administrative remedies. (FDIC-Receiver Mot. 4-5.) Indeed, Plaintiffs concede that such administrative exhaustion is a prerequisite to their right to file suit in this Court: "Subject matter jurisdiction does not vest in the District Court until a Plaintiff has exhausted administrative remedies with the FDIC's own claims process. Only after denial or rejection of ac [sic] claim can a plaintiff seek review in the District Court." (Pls.'s Resp. to FDIC-Receiver's Mot. 1.) Plaintiffs assert, however, that they did file a claim with the FDIC-Receiver and that they have exhausted their administrative remedies, providing in support the disallowance letter from the FDIC-Receiver dated December 15, 2009. Plaintiffs point out that, as required by the statute, they sought judicial review of this denial on January 22, 2010, less than sixty (60) days from the date on which they received their disallowance of claim, as required by FIRREA. (*Id.*)

The FDIC-Receiver argues in its Reply that notice was sent to BOC on April 27, 2009, designating a claim bar date of July 28, 2009. (FDIC-Receiver Reply, 3; Ex. 1, Quick Decl. ¶ 3-4.) The FDIC-Receiver states that Plaintiffs filed a Proof of Claim with the FDIC-Receiver on September 17, 2009, after the claim bar date. (*Id.* ¶5.) The FDIC-Receiver argues that "failure to file an administrative claim within the period provided by § 1821(d)(6) results in [a claimant] having 'no further rights or remedies with respect to such claim[s] . . . .'" *Village of Oakwood, supra* at 386. They argue that, therefore, this Court is without jurisdiction to hear Plaintiffs' claims.

8

Plaintiffs concede that "at some point, the Plaintiffs' former in-house counsel, Konrad Stauch, submitted Plaintiff's claim to the FDIC for review." (Pls.'s Resp. to FDIC-Receiver 4.) Plaintiffs attach to their Response, and admit that they received, the FDIC-Receiver's notice disallowing their claim as untimely. (*Id.* Ex. D.) Plaintiffs state that Konrad Stauch passed away on January 20, 2010 and that they have not been able to recover from his files the actual Proof of Claim filed with the FDIC-Receiver and therefore cannot substantiate timely filing. They argue, however, that even if the Proof of Claim was filed after the July 28, 2009 bar date, their claims are still properly before this Court because they did exhaust their administrative remedies, pointing to the December 15, 2009 disallowance as evidence of exhaustion. (*Id*. at 6.)

The FDIC-Receiver is correct that the Plaintiffs, who concede having received notice of the receivership and claim bar date, were required to file a claim with the FDIC by July 28, 2009. The unrebutted evidence is that they filed their claim on September 17, 2009.[2] Thus, they did not seek administrative review within the prescribed time and should have no further rights or remedies with respect to those claims. However, Plaintiffs argue that although they had notice of the claims filing deadline, they were unaware of their claims, and were unable to discover them, until after the July 28, 2009 bar date had passed. (Pls.'s Resp. to FDIC-Receiver 8.)

Plaintiffs rely on *Carlyle Towers Condominium Ass'n, Inc. v. FDIC*, 170 F.3d 301 (2d Cir. 1999) for the proposition that when a claimant, who admittedly received notice of the receivership and claim bar date, first learns of a claim against the failed institution after the bar date, such a claimant may still present its claim to the FDIC for administrative review of such a "post-bar" claim.

---

[2] The Quick Declaration is the only evidence submitted that substantiates the date on which Plaintiffs allegedly filed their claim with the FDIC-Receiver. Plaintiffs do not deny that this is so but the actual claim, and proof of the date on which it was filed, have not been provided.

9

170 F.3d at 306. The court in *Carlyle* first recognized that FIRREA contains procedures for claims filed after the claim bar date when the claimant did not receive notice of the appointment of the receiver in time to file such a claim before the claim date, if the claim is filed in time to permit payment. 170 F.3d at 305-306 (citing 12 U.S.C. § 1821(d)(5)(C)). This provision on its face would appear, the court observed, to prohibit the FDIC from allowing a claim against a failed bank in receivership if the claim is filed after the claim bar date, and the claimant had notice of the appointment of the receiver. 170 F.3d at 306.

However, as the court next observed, this interpretation "creates tension" with the section of FIRREA that clearly allows for consideration of claims filed by newly-discovered creditors who may have received notice of the appointment of the receiver. *Id.* The court then discussed the procedures adopted by the FDIC to address this ambiguity which, under certain circumstances, "allow consideration of the merits of [post-bar] claims even when the claimant had knowledge of the appointment of the receiver." The court also discussed at length the interpretation of those procedures in two seminal cases on the subject, *Stamm v. Paul*, 121 F.3d 635, 641 (11th Cir. 1997) and *Heno v. FDIC*, 20 F.3d 1204, 1209, 1212-1214 (1st Cir. 1994), both of which support the conclusion that the FDIC will, in certain cases, review post-bar claims filed by those who in fact received notice of the receivership. "This latter interpretation, although difficult to reconcile with the plain language of the statute, affords late filing claimants a forum in which their claims might be heard and thus seemingly expands the administrative review available to claimants." *Carlyle, supra* 170 F.3d at 306. The court in *Carlyle* "premise[d its] analysis on the proposition that the Association's claim arose after the bar date" and concluded that FIRREA does not establish an absolute jurisdictional bar but rather a jurisdictional prerequisite, "something more akin to a statute

10

of limitations," which permitted consideration of issues of "waiver, estoppel and equitable tolling." 170 F.3d at 310. The Second Circuit remanded to the district court for consideration of the circumstances surrounding the untimely filing.

The FDIC-Receiver argues that *Carlyle* is inapplicable to Plaintiffs' claims because "all of the conduct of Michigan Heritage Bank or the FDIC to which Plaintiffs refer happened before the claim bar date." (FDIC-Receiver Reply 4.) The FDIC-Receiver argues that all of Plaintiffs' claims arose before the bar date and therefore the reasoning of *Carlyle* does not justify a departure from the straightforward rule of exhaustion in this case. Plaintiffs dispute this and argue that "the thefts were concealed during the claims period and were only actually discovered as thefts, and thereby claims, on August 20, 2009, after the July 28, 2009 bar date set by the FDIC." (Pls.'s Resp. to FDIC-Receiver's Mot. 8.)

The *Carlyle* court correctly interpreted *Heno* and *Stamm* as holding that if a claim does not accrue until after the deadline set by the FDIC for filing administrative claims, the FDIC procedures authorize the FDIC-Receiver to evaluate such a late-filed claim even though the claimant had notice of the receivership. In *Stamm,* referring to the FDIC Policy Statement regarding post-receivership claims, the court stated: "The RTC essentially has interpreted the phrase, 'in time to file such claim,' within the exception to mean 'at a time when the claimant could have filed such a claim.' According to the RTC, therefore, where, as here, a claim arises after the initial 90-day, claim-filing period, the claimant did not receive notice of the RTC's appointment at a time when he or she could have filed that claim and thus, the exception to the administrative bar date applies."[3] *Stamm*, *supra* 121 F.3d

---

[3] The RTC ceased operations on December 31, 1995 and was succeeded by the FDIC. *See FDIC v. Barton*, 96 F.3d 128, 131 n. 1 (5th Cir. 1996) (citing 12 U.S.C. § 1441a(m)(1) (1995 Supp.)).

11

at 641. Similarly, in *Heno*, the court reasoned that: "Under the statutory interpretation implicit in its internal manual procedures, FDIC construes the pivotal statutory bar-date exception in subsection 1821(d)(5)(C)(ii)- 'the claimant did not receive notice of the appointment of the receiver in time to file such claim before [the bar] date'- as permitting late filing *even by claimants who were on notice of FDIC's appointment* but could not file their claim because it did not come into existence until after the bar date prescribed in subsections 1821(d)(3)(B)(i) and 1821(d)(5)(C)(I)." 20 F.3d at 1209 (emphasis in original).

Both *Stamm* and *Heno* involved post-bar date actions by the receiver that resulted in accrual of the claim. The *Carlyle* court assumed that plaintiffs' claims arose after the bar date. In the instant case, Plaintiffs do not attack any post-bar actions of the receiver but claim that they were unable to discover the fraud until sometime in August, after the claim bar date had passed. It is undisputed that the actual account withdrawals each occurred before the claim bar date, in April and in early July. Moreover, it is undisputed that as early as the first week of June, 2009 (Compl. ¶ 33), Plaintiffs had knowledge of two of the fraudulent withdrawals and could have filed claims with the receiver at that time but did not. Plaintiffs were sent notice of the FDIC receivership on April 27, 2009 and do not deny that they received that notice and were aware of the FDIC receivership. They had notice that the claim bar date was July 28, 2009 and they were admittedly aware at that time of at least two fraudulent withdrawals and could have acted to protect their rights by filing their claim with the FDIC-Receiver. The FDIC-Receiver legitimately argues that these two withdrawals should have put Plaintiffs on notice that they needed to file their claim with the FDIC-Receiver at that time and that Plaintiffs' failure to comply with the administrative exhaustion requirements of FIRREA results in their having no further rights with respect to their claims.

### C. Equitable Principles Mandate a Stay in this Case.

However, the Court concludes that this case presents several compelling reasons to stay, rather than dismiss, this matter, and to permit Plaintiffs' the opportunity to present their claims to the FDIC-Receiver for review. First, the claims review process established under FIRREA was never intended to create roadblocks to review of the claims of worthy creditors:

> FIRREA seeks the efficient and expedient handling of claims. Efficiency and expediency, however, are not justifications for vitiating the primary purpose of FIRREA. Congress intended to establish a scheme for fairly adjudicating claims against failed financial institutions. It did not structure a system for the sandbagging of valid claims. The statute is not to be used as an easy means of avoiding consideration of claims on their merits.

*Whatley v. Resolution Trust Corp.*, 32 F.3d 905, 909-910 (5th Cir. 1994). Second, this Court anticipates that the Sixth Circuit, based upon its recognition in *Village of Oakwood, supra*, that the requirements of FIRREA were not intended to create an absolute bar to jurisdiction, would apply equitable principles in this case and would permit Plaintiffs to file their claim with the FDIC Receiver. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Holland v. Florida*, 130 S. Ct. 2549, 2566 (2010) (Alito, J. concurring). Although decided in the context of the tolling provisions of the AEDPA, the Supreme Court's recent opinion in *Holland* reminds the Court of its obligation to apply equitable principles when circumstances demand. With these considerations in mind, the Court concludes that the following factors compel application of those principles in the instant case:

(1) It is uncontested that a former employee of MHB wrongfully withdrew over $70,000

13

from Plaintiffs' accounts and that Plaintiffs have not been made whole for this loss.[4]

(2) At the time that the claim bar deadline expired on July 28, 2009, Plaintiffs allege that they were aware of only the two unexplained withdrawals made on April 22, 2009, and were in the process of trying to get the money returned to their accounts based upon the fraudulent assurances of Iannarone that there had been a mistake and that the money would be returned. The FDIC-Receiver states in Reply that all of the conduct of MHB or FDIC-Receiver to which Plaintiffs refer happened before the claim bar date. FDIC-Receiver cites *Taylor v. ANB Bancshares,* 682 F. Supp. 2d 970, 977 (W.D. Ark. 2009) to support this argument but the court in *Taylor* expressly distinguished *Carlyle* because it found that in the case *sub judice*, plaintiffs' claims accrued prior to the claims bar date. 682 F. Supp. 2d at 977. Plaintiffs in *Taylor* did not argue that they did not know about their claims prior to claim bar date, they argued that they were misled into believing that they did not have to file a claim with the FDIC, an argument that the court rejected. Plaintiffs here argue that their claims had not accrued or were not discoverable before the claim bar date and that therefore, *Carlyle* provides an apt analogy. As a result of Iannarone's affirmative acts of concealment, and through no lack of diligence on their part, it was not until August 20, 2009 (past the claim bar date) that Plaintiffs were able to discover the additional withdrawals and to begin an official investigation into the matter. It was some time later when they became aware that Defendant Iannarone was the perpetrator, recognized the existence of their claim and filed their claim with the FDIC Receiver;

(3) Plaintiffs attempted to comply with the administrative procedures and filed their claim

---

[4] Level One maintains that it has reimbursed Plaintiffs $28,500 for the three withdrawals that occurred in July, even though Iannarone was not a Level One employee in July. *See* Level One Bank's Motion to Dismiss or for Summary Judgment, Dkt. No. 6, p. 3.

first with the FDIC-Receiver, who sent them a notice of disallowance which stated that their claim was untimely but did not explain to them fully their options for further review, i.e. that late-filed claims can be considered under certain circumstances, as required by FIRREA. *See Heno, supra* at 1209-1210 (criticizing the FDIC for failing to "take[] reasonable steps to forewarn potential claimants of the existence of its internal manual procedures for filing "late" claims, thus contributing indispensably to the convoluted travel of this case."). The FDIC has taken the position that a claimant who could not have discovered its claim by the claim filing date, even though such a claimant received notice of the receivership, by definition did not receive such notice "in time to file a claim." This is not a case like *Stamm* where the court found that plaintiffs had constructive notice of the late-filing claim procedures based upon statute and administrative edict, and therefore were obligated to seek administrative review of their claims, which they failed to do. Here, Plaintiffs did seek administrative review of their claims, and their claims were disallowed, without a suggestion from the FDIC-Receiver in the letter of disallowance that they had any further avenue of administrative relief.

In the instant case, equitable principles and the goals of FIRREA caution against dismissal of Plaintiffs' claims against the FDIC-Receiver and favor instead a stay while Plaintiffs are permitted to present their claim in the first instance to the FDIC-Receiver for administrative review. Therefore, the Court will stay this matter pending Plaintiffs' exhaustion of administrative remedies, as requested by the FDIC-Receiver, for a period commencing on the date that this Order is entered and ending on the earlier of 180 days from the date on which Plaintiffs file their claims with the FDIC as Receiver or the date the FDIC disallows the claims.

### D. The Case Will Be Stayed as to All Parties and Proceedings

In the interests of judicial economy, and to best effectuate the goals of FIRREA, the stay will apply to all parties and all proceedings. The Court finds that while some of Plaintiffs' claims appear to be aimed solely at Level One for conduct that occurred after it acquired the assets of MHB, the claims appear "inextricably intertwined" and proceeding with the litigation in the absence of the FDIC-Receiver would be contrary to the goals of FIRREA and wasteful of the Court's resources. *See Cassese v. Washington Mutual, Inc.*, No. 05-2724, 2009 WL 3599552 (E.D.N.Y. April 6, 2009) ("Obviously, judicial resources would be wasted if the plaintiffs could press forward now in the litigation against every defendant except the depository institution."). *See also Glover, supra,* 2009 WL 798832 at * 7 (observing that continuing as to other parties during the pendency of the 180-day stay would be contrary to FIRREA's statutory scheme and would waste judicial resources); *Gumowitz v. First Fed. Sav. & Loan Assoc. of Roanoke*, No. 90-8083, 1991 WL 84630 at * 2 (S.D.N.Y. May 17, 1991) (denying plaintiff's request to continue the action as to other defendants where the "overlapping roles of all defendants" would necessarily force the [FDIC] to participate in the continued action to protect its interests, contrary to FIRREA's goal of allowing the receiver to concentrate on the failed institution and "fulfill its role as receiver for the Bank defendants.")

### IV. CONCLUSION

The Court GRANTS the FDIC-Receiver's motion to STAY Pending the Exhaustion of Administrative Remedies (Dkt. No. 11). This matter will be stayed as to all parties and proceedings for a period commencing on the date that this Order is entered and ending on the earlier of 180 days from the date on which Plaintiffs file their claims with the FDIC as Receiver or the date the FDIC

disallows the claims.

IT IS SO ORDERED.

                                              S/Paul D. Borman
                                              PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

Dated: August 17, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 17, 2010.

                                              S/Denise Goodine
                                              Case Manager